# United States Court of Appeals

*for the*

# Third Circuit

◆

No. 24-1896

LESROY E. BROWNE,
*on behalf of himself and those similarly situated,*

*Appellant- Plaintiff.*

– v. –

NATIONAL COLLEGIATE STUDENT LOAN TRUST, also known
as National Collegiate Master Student Loan Trust I;
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1;

*(For Continuation of Caption See Inside Cover)*

*Appellees-Defendants.*

ON APPEAL FROM AN ORDER ENTERED IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY IN CASE NO. 2:22-
CV-02713 BEFORE THE HONORABLE MADELINE COX ARLEO, U.S.D.J.

## BRIEF OF PLAINTIFF-APPELLANT AND JOINT APPENDIX
## VOLUME I OF II (Appx1-App8)

Yongmoon Kim
Philip D. Stern
Mark Jensen
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
(201) 273-7117
*Attorneys for Plaintiff-Appellant Lesroy
E. Browne*

NATIONAL COLLEGIATE STUDENTLOAN TRUST 2004-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2004-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2005-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2005-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2005-3;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-3;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-4;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-3;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-4;
WILMINGTON TRUST CO, as Trustee for National Collegiate Student Loan
    Trust;
US BANK NA, in its Role as Special Servicer for the National Collegiate
Student Loan Trust;
TRANSWORLD SYSTEMS INC,

*Appellees-Defendants.*

Scott C. Borison
BORISON FIRM, LLC
1400 S. Charles Street
Baltimore, Maryland 21230
Telephone: (301) 620-1016
scott@borisonfirm.com

*Attorneys for Plaintiff-Appellant Lesroy E. Browne*

# TABLE OF CONTENTS

TABLES OF AUTHORITIES ................................................................................. III

1.  INTRODUCTION ........................................................................................ 1

2.  SUBJECT MATTER AND APPELLATE JURISDICTION ......................... 2

3.  QUESTIONS PRESENTED ......................................................................... 4

4.  RELATED CASES AND PROCEEDINGS ................................................. 5

5.  STATEMENT OF THE CASE ..................................................................... 5

    5.1.  Relevant Facts ................................................................................ 5

          5.1.1.  The Origination of the Loans ......................................... 6

          5.1.2.  The Role of U.S. Bank ..................................................... 8

          5.1.3.  The Servicing of the Loans ............................................. 9

          5.1.4.  Wilmington Trust's Role ................................................ 10

          5.1.5.  Government Agencies and State Attorneys' General Have
                  Found that the NCT Trusts Do Not Have Personal Knowledge
                  to Show They have Proof of Ownership ......................... 11

    5.2.  Procedural History ...................................................................... 14

    5.3.  Rulings Presented for Review ..................................................... 16

6.  SUMMARY OF ARGUMENT ................................................................... 16

7.  ARGUMENT .............................................................................................. 20

    7.1.  Standard of Review ...................................................................... 20

    7.2.  The Court Erred in Relying on the Deposit and Sale Agreement, a
          Document that was not Integral to the Amended Complaint ......... 21

    7.3.  The District Court Erred in Finding Plaintiff's Factual Assertions
          Supporting Unjust Enrichment Implausible ................................. 22

7.4. The Statutory History of the Consumer Finance Licensing Act Indicates that the Legislature Intended to Provide an Implied Private Right of Action .......................................................................26

7.5. Notes/Debts ........................................................................36

7.6. The Trust Defendants Committed Fraud in Connection with the Subsequent Performance of the Sale of Merchandise by Enforcing a Void Account Arising from the Sale of Credit ...................................40

*7.6.1.* **The Elements of a Claim Under the Consumer Fraud Act** *...40*

*7.6.2.* **The Consumer Fraud Act Covers Assignees Collection Efforts Stemming from a Sale of Credit** *...............................................41*

*7.6.3.* **Browne Suffered an Ascertainable Loss Due to the Trust Defendants' Enforcement of Void Consumer Credit Contract** *46*

**8. CONCLUSION** ................................................................**49**

**CERTIFICATION OF BAR MEMBERSHIP** ..............................................**50**

**CERTIFICATE OF COMPLIANCE** ...................................................**51**

**CERTIFICATE OF SERVICE** .....................................................**52**

# TABLES OF AUTHORITIES

## CASES

*Anspach v. City of Phila.*,
   503 F.3d 256 (3d Cir. 2007) ........................................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................20, 21

*Ayres v. Daucher*t,
   130 N.J.Super. 522 (App.Div.1974) ............................................ 34

*Bauer v. Newark*,
   7 N.J. 426 (1951) ...................................................................... 48

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ...................................................... 22

*Bosland v. Warnock Dodge, Inc.*,
   197 N.J. 543 (2009) ................................................................... 41

*Boyko v. Am. Int'l Grp., Inc.*,
   No. 08-2214 (RBK/JS), 2009 U.S. Dist. LEXIS 119339 (D.N.J. Dec. 23,
   2009) ........................................................................................ 43

*Brewer v. Porch*,
   53 N.J. 167 (1969) ..................................................................... 34

*Brown v. Card Serv. Ctr.*,
   464 F.3d 450 (3d Cir. 2006) ....................................................... 20

*Browne v. Nat'l Collegiate Student Loan Tr.*,
   No. 21-11871 (KM) (JSA), 2021 U.S. Dist. LEXIS 244537 (D.N.J. Dec. 22,
   2021) ........................................................................................ 32

*Chulsky v. Hudson Law Offices, P.C.*,
   777 F. Supp. 2d 823 (D.N.J. 2011) ............................................. 44

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*,
   96 F.4th 599 (3d Cir. 2024) ....................................................... 11

iii

*Cox v. Sears Roebuck & Co.*,
138 N.J. 2 (1994) ...................................................................... 47

*D'Agostino v. Maldonado*,
216 N.J. 168 (2013) .................................................................. 48

*David v. Gov't Emps. Ins. Co.*,
360 N.J. Super. 127 (App. Div. 2003) ...................................... 34

*DepoLink Court Reporting & Litig. Support Servs. v. Rochman*,
430 N.J. Super. 325 (App. Div. 2013) ................. 19, 43, 44, 45, 46

*Dewey v. R.J. Reynolds Tobacco Co.*,
121 N.J. 69 (1990) .................................................................... 43

*Doe v. Princeton University*,
30 F.4th 335 (2022)................................................................... 22

*Edelstein v. Hub Loan Co.*,
130 N.J.L. 511 (1943) ............................................................... 29

*Family Fin. Corp. v. Gaffney*,
11 N.J. 565 (1953) .................................................................... 29

*Family Fin. Corp. v. Gough*,
10 N.J. Super. 13 (App. Div. 1950)......................................28, 29

*Gonzalez v. Wilshire Credit Corp.*,
207 N.J. 557 (2011) ...........................................................42, 43, 46

*Hoffman v. Asseenontv.Com, Inc.*,
404 N.J. Super. 415 (App. Div. 2009) ...................................... 47

*In re Egalet Corp. Sec. Litig.*,
340 F. Supp. 3d 479 (E.D. Pa. 2018), *aff'd sub nom. Spizzirri v. Zyla Life
Scis.*, 802 F. App'x 738 (3d Cir. 2020)...................................... 22

*In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1,
2005-2, 2005-3*,
971 F.3d 433 (3d Cir. 2020) ................................................. 8, 10

*In re Resolution of State Com. of Investigation*,
108 N.J. 35 (1987) ...............................................................33, 35

*In re The First Marblehead Corp. Sec. Litig.*,
  639 F. Supp. 2d 145 (D. Mass. 2009) ........................................................... 7

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
  192 N.J. 372 (2007) .................................................................................... 41

*Jefferson Loan Co., Inc. v. Session*,
  397 N.J. Super. 520 (App. Div. 2008) ......................................................... 42

*Joe Hand Promotions, Inc. v. Mills*,
  567 F. Supp. 2d 719 (D.N.J. 2008) .............................................................. 44

*Jubelt v. United Mortg. Bankers, Ltd.*,
  Civil Action No. 13-7150 (ES) (MAH), 2015 U.S. Dist. LEXIS 84595
  (D.N.J. June 30, 2015) ................................................................................. 33

*Lee v. Carter-Reed Co., L.L.C.*,
  203 N.J. 496 (2010) .................................................................................... 40

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*,
  289 N.J. Super. 489 (App. Div. 1996) ......................................................... 41

*Lemelledo v. Benefit Mgmt. Corp.*,
  150 N.J. 255 (1997) ............................................................ 27, 29, 30, 41, 42

*Lettenmaier v. Lube Connection, Inc.*,
  162 N.J. 134 (1999) .................................................................................... 40

*Liberty Bell Bank v. Deitsch*,
  No. 08-0993, 2008 U.S. Dist. LEXIS 71303 (D.N.J. Sept. 9, 2008) ........... 33

*Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*,
  823 F.3d 184 (3d Cir. 2016) ........................................................................ 21

*Maltese v. Twp. of N. Brunswick*,
  353 N.J. Super. 226 (App. Div. 2002) ......................................................... 48

*Mathiesen v. Moleski*,
  No. A-0365-10T3, 2011 N.J. Super. Unpub. LEXIS 2187 (App. Div. Aug.
  12, 2011) ..................................................................................................... 43

*Mazo v. Way*,
    551 F. Supp. 3d 478 (D.N.J. 2021) ............................................................. 20

*McQueen v. Fein, Such, Kahn & Shepard, P.C.*,
    ESX-L-1439-22, 2023 N.J. Super. Unpub. LEXIS 640 (Law Div. April 26,
    2023) ........................................................................................................... 39

*Monroe v. Beard*,
    536 F.3d 198 (3d Cir. 2008) ....................................................................... 21

*New Century Fin. v. Trewin*,
    2018 N.J. Super. Unpub. LEXIS 1688 (Ch. Div. May 24, 2018) ............... 32

*Ogbin v. GE Money Bank*,
    No. 10-5651(NLH)(AMD), 2011 U.S. Dist. LEXIS 64735 (D.N.J. June 13,
    2011) ........................................................................................................... 43

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2007) ....................................................................... 20

*Pollitt v. DRS Towing, LLC*,
    No. 10-1285 (AET), 2011 U.S. Dist. LEXIS 41825 (D.N.J. Apr. 15, 2011) 42

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
    168 N.J. 255 (2001) .................................................................................... 33

*Ryan v. Motor Credit Co.*,
    132 N.J. Eq. 398, 401 (1942) ..................................................................... 28

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
    677 F.3d 178 (3d Cir. 2012) ....................................................................... 20

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000) ....................................................................... 21

*Shaw v. City of Jersey City*,
    346 N.J. Super. 219 (App. Div. 2002) ........................................................ 43

*Valentine v. Mullooly, Jeffrey, Rooney & Flynn LLP*,
    No. 2:20-cv-14152 (WJM), 2022 U.S. Dist. LEXIS 118399 (D.N.J. July 6,
    2022) ........................................................................................................... 37

*Veras v. LVNV Funding, LLC*,
  No. 13-1745 (RBK/JS), 2014 U.S. Dist. LEXIS 34176 (D.N.J. Mar. 17,
  2014) .................................................................................................. 17, 32, 33

*Woo-Padva v. Midland Funding LLC*,
  2022 N.J. Super. Unpub. LEXIS 96 (Law Div. Jan. 21, 2022) .................. 32

*Wozniak v. Pennella*,
  373 N.J. Super. 445 (App. Div. 2004) ....................................................... 41

## STATUTES

28 U.S.C. § 1291 ........................................................................................ 4

28 U.S.C. § 1332(d) .................................................................................... 3

N.J.S.A. 17:10-13 ...................................................................................... 29

N.J.S.A. 17:11C-11 .................................................................................... 27

N.J.S.A. 17:11C-18(i) ................................................................................ 31

N.J.S.A. 17:11C-20 .................................................................................... 29

N.J.S.A. 17:11C-3(a) ................................................................................. 26

N.J.S.A. 17:11C-33(b) ...................................................................... 26, 27, 34

N.J.S.A. 17:11C-43 .................................................................................... 27

N.J.S.A. 17:11C-51 to -89 .......................................................................... 30

N.J.S.A. 17:11C-6 ...................................................................................... 40

N.J.S.A. 17:11C-7(e) .................................................................................. 27

N.J.S.A. 17:C-1 to -49 ............................................................................... 31

N.J.S.A. 52:9M-15(a) ................................................................................. 35

N.J.S.A. 56:8-2 ...................................................................................... 39, 41

## OTHER AUTHORITIES

1996 N.J. ALS 157 ..................................................................................... 30

1996 N.J. Ch. 157 ................................................................. 30

1996 N.J. Laws 157 .............................................................. 30

1997 N.J. A.N. 2513 ............................................................. 30

*Black's Law Dictionary* 374 (9th ed. 2009) ..................................... 48

Pressler & Verniero, *Current N.J. Court Rules*, comment 3.5 on *R.* 1:36 (2011)
................................................................................ 43

# 1. Introduction

Plaintiff Lesroy E. Browne sued the fifteen Defendant National Collegiate Student Loan Trusts, and the other Defendants who act on behalf of the Trusts, alleging they devised a scheme to misrepresent and deceive Plaintiff and other proposed class members into making payments on loans alleged to be owed to "NCT," a fictitious entity he did not owe and had no legal right to collect consumer loans without a proper license. Without any proof of ownership in their possession to show that they are assignees of any specific loan, the Defendants' solicitation of payments from alleged borrowers is illegal even if the Defendant Trusts are able to prove their assignee status. Without a proper license, the Trusts and the other Defendants are conducting business in New Jersey illegally and any obligation to pay is void. To stop this conduct going forward and to remedy the illegality for class members, the Plaintiff and proposed class members bring the following causes of action, (1) a request for declaratory judgment and injunctive relief for violations of the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1 *et. seq.*, (2) violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.*, and (3) unjust enrichment.

## 2.  SUBJECT MATTER AND APPELLATE JURISDICTION

This appeal arises from the District Court's dismissal of Plaintiff-Appellant's claims under state law. Browne appeals the District Court's April 30, 2024 Order dismissing Browne's First Amended Complaint (Appx3). Browne timely filed his Notice of Appeal on May 11, 2024 (Appx1).

Browne initiated this putative class action on April 21, 2021, by filing his Complaint (Appx32) against Defendant National Collegiate Student Loan Trust ("NCSLT") in the Hudson County vicinage of the Law Division of the Superior Court of New Jersey, under Docket No. HUD-L-1598-21.

On May 27, 2021, Defendants National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3 and National Collegiate Student Loan Trust 2007-4 ("NCSLT Trusts") removed the action to the

District of New Jersey pursuant to the Class Action Fairness Act ("CAFA") at 28 U.S.C. § 1332(d). (Appx24). The action was docketed as 2:21-cv-11871.

On July 30, 2021, NCSLT moved to dismiss the Complaint for lack of Article III standing. (Appx72). The District Court granted NCSLT's Motion on December 21, 2021, without prejudice. (Appx75). Following Browne's Motion to Alter or Amend the District Court's December 21, 2021 Order, the action was remanded back to State Court on February 16, 2022. (Appx78).

Post remand, Browne filed his First Amended Complaint ("FAC") on April 21, 2022. (Appx89). The FAC named NCSLT a/k/a National Collegiate Master Student Loan Trust I, and added the Defendants, Wilmington Trust Company (as trustee for NCSLT), U.S. Bank, N.A. (in its role as special servicer for NCSLT), and Transworld Systems, Inc. (collectively the "Trust Defendants"). (Appx89).

On May 9, 2022, predicated on the filing of the FAC, the Trust Defendants removed the action to the federal district court for the District of New Jersey pursuant to the CAFA at 28 U.S.C. § 1332(d). (Appx79). Browne moved to remand the case consistent with the prior remand order. On March 9, 2023, the District Court granted the remand. The remand order was vacated by this Court and the action proceeded before the District Court. On March 20, 2023, Defendants petitioned this Court for permission to appeal the March 9,

2023 Order. (Appx201) On June 2, 2023, this Court granted Defendants' petition. (Appx344). On August 1, 2023, this Court reversed the March 9, 2023 Order and remanded the case for further proceedings. (Appx346).

On September 25, 2023, the Trust Defendants moved to dismiss the FAC. (Appx350; Appx352; Appx356; Appx359). On April 30, 2024, the District Court entered an Order granting the Trust Defendants' respective Motions to Dismiss. (Appx3).

Appellate jurisdiction arises under 28 U.S.C. § 1291, as this appeal arises as of right from the District Court's Order of dismissal.

### 3. QUESTIONS PRESENTED

1.     Whether the District Court erred in holding that the New Jersey Consumer Finance Licensing Act does not provide for an implied private right of action.

2.     Whether the District Court erred in holding that the New Jersey Consumer Finance Licensing Act does not apply to Defendants, as purchasers of notes governing student loan accounts.

3.     Whether the District Court erred in holding that Defendants did not violate the Consumer Fraud Act by collecting on void/uncollectable notes.

4.     Whether the District Court erred in dismissing the claim of unjust enrichment.

## 4. RELATED CASES AND PROCEEDINGS

Following the District Court's March 9, 2023 Order granting Browne's Motion for Remand, the Trust Defendants petitioned this Court for leave to appeal the same. (Appx201). The Petition was assigned Case No. 23-8014 and granted on June 2, 2023. (Appx344).

The Trust Defendants filed their Notice of Appeal on June 2, 2023, and the Appeal was assigned Case No. 23-2017. (Appx346). On August 1, 2023, this Court entered a judgment reversing the District Court's March 9, 2023 Order of Remand, and, on August 23, 2023, issued a Mandate remanding the action for further proceedings in the District Court. (Appx344; Appx346).

Appellant is not aware of any other related cases or proceedings pending before this Court.

## 5. STATEMENT OF THE CASE

### 5.1. Relevant Facts

In 2007, Plaintiff Lesroy Browne entered into a loan agreement with JP Morgan Chase for a student loan. FAC ¶ 84. From June 2017 to June 2020, Browne made payments on this loan to American Education Services ("AES"), believing that AES's references to "NCT" as the loan's owner were accurate. *Id.* ¶ 86. AES reported these payments toTransUnion and possibly other credit reporting agencies, indicating that the loan was owned by "AES/NCT." *Id.* ¶ 87. After Browne fully repaid the loan, he discovered that the Defendant NCT

Trusts were not properly licensed under the New Jersey Consumer Finance Licensing Act, rendering their collection of funds illegal. *Id.* ¶¶ 88, 90, 92.

Browne initially made payments to AES under the belief that AES was entitled to collect the loan payments. *Id*. ¶ 1. However, after repaying the loan, Browne sought clarification from AES regarding the identity of the "current creditor." *Id.* AES had not previously identified any specific entity, only referring to "NCT" as the loan's owner. Privacy disclosure notices also referenced "NCSLT," which led to further confusion. *Id.* When reporting the loan to consumer reporting agencies, it lists "AES/NCT" as the creditor. *Id.*

### 5.1.1. *The Origination of the Loans*

First Marblehead Corporation ("FMC") established the fifteen National Collegiate Student Loan Trusts (the "NCSLT Trusts") as a vehicle for acquiring and servicing student loans originated from high-cost, high interest purported private student loan lending programs that FMC created and facilitated for financial institutions. *Id.* ¶ 32; FAC, Ex. A (FMC 10-K, pg. 4) (Appx126). Lacking the national recognition necessary to attract potential borrowers independently, FMC devised a strategy to partner with national banks, allowing loans to be issued under the banks' names. *Id.* ¶¶ 33-34, FAC (Appx97). FMC handled all aspects of the loan process, including marketing, borrower inquires, loan applications, origination, disbursement of funds,

securitization, and servicing for its banking and credit union clients. *In re The First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 148 (D. Mass. 2009).

The participating banks had minimal involvement in the loan process beyond lending their names. *Id.* ¶ 34 (Appx97). To encourage banks to participate, FMC enlisted The Education Resources, Inc. ("TERI"), a non-profit organization, to guarantee loans in the event of default, assuring that FMC would manage all tasks related to the loan's creation. *Id.* ¶ 36 (Appx98). As part of the agreement, TERI became the depository of the original loan documents issued in the names of the participating banks. *Id.* Per the agreement, the NCSLT Trusts were assigned the loans made through this scheme. *Id.* ¶ 39 (Appx99). FMC acknowledges that the NCSLT Trusts have no employees and are identified only by numeric designations, operating through other entities. *Id.*

In 2008, TERI filed for bankruptcy following a surge in high-risk loan defaults arose during the Great Recession. *Id.* ¶ 38 (Appx98). As part of the litigation between TERI and FMC, the bankruptcy court awarded TERI control over its loan database. *Id.* ¶ 38; FAC, Ex. B (Appx130) (Transition Services Agreement, pp. 3-4). This posed an unforeseen issue for FMC: when TERI terminated the relationship, it retained control of the loan records that FMC

had relied upon. *Id.* Consequently, FMC no longer had access to the actual loan records. *Id.*

### 5.1.2. The Role of U.S. Bank

U.S. Bank is the Indenture Trustee of the NCSLT Trusts. *Id.* ¶ 40 (Appx99). The NCSLT Trusts issued promissory notes ("Notes") to investors. making these investors the beneficiaries of the income generated from the student loans purchased with their investment funds. *In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 437 (3d Cir. 2020). As the Indenture Trustee, U.S. Bank issued indentures to secure the Notes for the benefit of the investors/noteholders. *Id.* In effect, the NCSLT Trusts transferred "all of the right, title, and interest in and to, among other things, the student loans held by the NCSLT Trusts, the related agreements, funds and accounts, and all related present and future claims" to U.S. Bank, as Indenture Trustee., for the benefit of the Noteholders." *Id.* at 439. Thus, U.S. Bank, as the Indenture Truess, relies on the collection of student loans allegedly acquired by the NCT Trust. *Id.* ¶ 23 (Appx95). Moreover, U.S. Bank's consent is also required to "waive, amend, modify, supplement or terminate" any of the Basic Documents. *Id.* at 439.

In addition, U.S. Bank serves as the Special Servicer for the NCT Trusts, meaning it is responsible for overseeing the collecting of loans held by the

NCT Trusts. *Id.* ¶ 42 (Appx99). Claims in this lawsuit are asserted against U.S. Bank in its role as Special Servicer, as it is the ultimate decision-maker and controller of the collection efforts pursued on behalf of the Trusts, whether those decisions are made directly by U.S. Bank or through servicers, subservicers, or attorneys hired to collect on the Trusts' behalf. *Id.* ¶ 42 (Appx99). While U.S. Bank has positioned intermediaries between itself and other parties involved in the collection process, it retains legal and ultimate control over these activities, regardless of the length of the intermediary chain. *Id.* This control is further evidenced by U.S. Bank's indemnification of servicers and others for any information or materials provided to them for connection with collection activities or other services. *Id.* ¶ 43 (Appx99).

### 5.1.3. *The Servicing of the Loans*

The documents provided to the servicers under their servicing agreements are very highly limited, consisting only of the "Original Credit Agreement," which refers to the signed first or first two pages of the Credit Agreement and related documents. *Id.* ¶ 44 (Appx100). There is no requirement to provide the servicer with the full terms and conditions of the Original Credit Agreement, nor is there any obligation to supply documents pertaining to the assignment of the Credit Agreements. *Id.* As a result, a Service Performance Review of the Trust's primary servicer, AES, revealed

that no assignment record exists for 100% of the accounts, and it is likely that none were ever created. *Id.* ¶ 46 (Appx100). Consequently, AES lacks necessary information to determine which Trust owns any given loan. As a result, AES generally refers to "NCT" in its communications with borrowers and in its credit reporting to consumer reporting agencies. *Id.* ¶ 47 (Appx102).

Similar to AES, the Trusts and all other entities acting on behalf of the Trusts rely solely on the limited documentation provided by AES. These parties also lack knowledge of which specific loans are owned by the Trusts. Id., ¶ 52, FAC *(Appx103)*. This lack of information was never disclosed to borrowers when the Trusts, through AES, demanded payment, constituting a material omission. Id., ¶¶ 48-50, FAC *(Appx103)*. None of the Defendants possess personal knowledge regarding the individual loans and or their alleged transfers, nor do they maintain records to would provide any basis for such knowledge. *Id.*, ¶ 52, FAC (Appx103).

### 5.1.4. Wilmington Trust's Role

Wilmington Trust serves as the Owner Trustee, responsible for managing the affairs of each Trust. *In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 438 (3d Cir. 2020). At the formation of the Trusts, Wilmington Trust executed a Trust Agreement and subsequently entered into Administration Agreements with

other entities. These agreements delegate the performance of the Trusts' duties

as well as the obligations of the Owner Trustee on behalf of the Trusts.

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.,* 96

F.4th 599, 603 (3d Cir. 2024) Additionally, the Trust' "property" is held under

Wilmington Trust's oversight as the Owner Trustee.

### 5.1.5. *Government Agencies and State Attorneys' General Have Found that the NCT Trusts Do Not Have Personal Knowledge to Show They have Proof of Ownership*

TSI's collection practices regarding student loans on behalf of the NCT

Trusts have been scrutinized by the federal Consumer Financial Protection

Bureau (CFPB). In its public enforcement action (2017-CFPB-0018), the

CFPB addressed TSI's use of affidavits that falsely claimed personal

knowledge of debts, as detailed in the Stipulation and Consent to the Issuance

of a Consent Order ("Transworld Stipulation") (Ex. C to the FAC, (Appx148))

and the Consent Order In the Matter of Transworld Systems, Inc. ("Transworld

Consent Order") *Id.* ¶¶ 60-61, Ex. D to FAC, (Appx158).

The Transworld Consent Order specifically identified TSI's unfair and

deceptive acts on behalf of the NCT Trusts, mandating remedies and

prohibiting such practices. *Id.*, ¶ 61. The CFPB found that TSI and its

affiliated law firms engaged in multiple violations from November 1, 2014, to

April 25, 2016, including: (a) filing thousands of collection lawsuits without

complete documentation proving ownership of the loans; (b) submitting affidavits claiming personal knowledge of debts when affiants lacked the requisite knowledge; and (c) initiating lawsuits without the intent or ability to prove their claims if contested. *Id.*, ¶ 62, FAC (Appx105). These actions constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). *Id.*, ¶ 63, FAC (Appx106).

The Consent Order also outlined the role of U.S. Bank as Special Servicer, which was responsible for directing TSI's actions, including requiring disclosures and withdrawing any improper affidavits or collection suits. *Id.*, ¶ 64, FAC (Appx106). Notably, despite the Consent Order, TSI continued its previous collection practices. *Id.*, ¶ 65, FAC (Appx106).

In litigation, TSI has utilized documents such as Pool Supplements, which are intended to establish the Trusts' interest in the loans. However, TSI lacks the loan schedules referenced in these agreements and instead relies on placeholders, misleadingly suggesting to plaintiffs and state courts that the Trusts have valid ownership *Id.* ¶ 66 (Appx106). TSI further complicates matters by attaching a "roster" to the Pool Supplements that does not reflect the original agreement, misleading consumers regarding the nature and legal status of their debts *Id.* ¶¶ 67-68 (Appx107).

The New York Attorney General has indicated that TSI's practice of presenting these rosters as "redacted" versions of original documents may confuse consumers and hinder their ability to respond to lawsuits. *Id.* ¶ 68 (Appx107). TSI's assertion that it has ceased this practice has been proven false, as it continues to alter Pool Supplement documents in court. *Id.* ¶ 69 (Appx107).

Moreover, TSI lacks actual knowledge of which NCT Trust owns specific loans, leading to a reliance on guesses in their claims. *Id.* ¶ 70 (Appx107). This issue has been validated by investigations from the Massachusetts Attorney General, which confirmed that TSI executed affidavits without sufficient documentation to establish loan ownership and that such misrepresentations tended to mislead consumers regarding the validity of their debts. *Id.* ¶¶ 71-72 (Appx107).

The defendants have coordinated their collection efforts, utilizing similar acronyms for the NCT Trusts in communications with borrowers, thus treating the Trusts as a single entity. *Id.* ¶ 72 (Appx108). Prior litigation has already resolved the issue of the Trusts' reliance on TSI's claims of personal knowledge, establishing that the defendants cannot contest their liability for pursuing collection actions without competent evidence. *Id.* ¶ 73 (Appx108).

### 5.2. Procedural History

Browne initiated this putative class action in the Superior Court of New Jersey, Law Division, Hudson County, HUD-L-1598-21 on April 21, 2021("Original Complaint") (Appx32). Allegations in the Original Complaint assert that the "NCT Trusts" referred to collectively by the Defendants using the unregistered trade name, "NCT" in their correspondence and communications with third-party consumer reporting agencies, are not licensed under the CFLA, N.J.S. A. 17:11C-3. On May 27, 2021, the Defendants removed the action to the District Court of New Jersey, which subsequently granted a motion to dismiss for lack of standing under Article III.

On January 18, 2022, Browne filed a motion to alter or amend the dismissal, seeking to have the case be remanded to state court and requesting that section III.b. of the District Court's opinion be stricken. (Appx76). On February 16, 2022, the District Court entered an order denying Browne's motion to strike section III.b. but granting his motion for remand. (Appx78).

Following the remand to the New Jersey Superior Court, Law Division, Hudson County, Browne amended his Complaint on April 21, 2022 (Appx90), to include three additional Defendants. Both the Original complaint and the Amended Complaint contain materially similar allegations of misrepresentation and a lack of proof regarding ownership of the loans. The

Trusts are each entities without any employees; Wilmington Trust serves as the "Owner Trustee" of each Trust, U.S. Bank serves as the "Indenture Trustee" and "Successor Special Servicer," and Transworld Systems functions as a collector for the Trusts. Together, these entities operate the Trusts.

The Trust Defendants removed the action once again on May 9, 2022, to the United States District Court for the District of New Jersey. (Appx79). Browne subsequently moved to remand the case consistent with the prior remand order. (Appx196). On March 9, 2023, the District Court granted the remand. However, the remand order was later vacated by this Court, allowing the action to proceed in the District Court. (Appx346). On March 20, 2023, Defendants petitioned this Court for permission to appeal the March 9 Order. (Appx201). On June 2, 2023, the Court granted Defendants' petition. (Appx344).

On April 30, 2024, the District Court granted a second round of motions to dismiss filed by the Defendants/Appellees. (Appx3). Mr. Browne timely filed this appeal on May 11, 2024. (Appx1).

### 5.3. Rulings Presented for Review

Browne appeals the District Court's April 30, 2024 Order granting the Trust Defendants' Motions to Dismiss the FAC. (Appx3).

## 6. Summary of Argument

The District Court erred by relying on the Deposit and Sale Agreement for the 2007-1 NCT Trust to establish ownership of the loan, as this document was not referenced in the First Amended Complaint or offered to support the Plaintiff's claims. Although the authenticity of the Agreement is acknowledged, the Plaintiff contends that his claims are not derived from this document, which cannot be used to dismiss the case unless it directly contradicts the allegations in the FAC. The Agreement does not address Browne's loan, meaning the allegations in the FAC regarding the Defendants' inability to prove ownership are to be taken as true. Furthermore, the District Court dismissed the Plaintiff's claim for Unjust Enrichment without properly considering the allegations in the FAC, which asserts that the Trusts collect loans without proof of ownership (in addition to the loans being voided by the NJCFLA). At the pleading stage, the Plaintiff only needs to present sufficient facts to suggest that the Defendants cannot establish ownership of the loans. The Plaintiff has adequately alleged that the Trusts lack proper documentation

and that their collection efforts are flawed due to missing assignments, undermining the Defendants' claims.

Additionally, the argument asserts that the CFLA provides an implied private right of action for aggrieved consumers. The legislative intent behind the CFLA emphasizes consumer protection, and historical context indicates that individual enforcement rights have always existed alongside regulatory oversight by the Commissioner. The Plaintiff contends that the previous interpretation in *Veras v. LVNV Funding, LLC*, No. 13-1745 (RBK/JS), 2014 U.S. Dist. LEXIS 34176 (D.N.J. Mar. 17, 2014), which denied a private right of action under the CFLA, fails to account for this legislative intent and historical context. As such, the Plaintiff urges the Court to recognize the implied private right of action under the CFLA and to reverse the District Court's ruling.

The District Court's dismissal was primarily based on the characterization of the loans as not constituting "notes" as defined by the CFLA. However, this interpretation has been rejected by both the District and Superior Courts in New Jersey. The CFLA requires any entity engaged in the consumer lending business to obtain a license, which includes purchasing, discounting, or endorsing notes. The word *note* means a written promise to pay a debt. Thus, the plain language of the CFLA covers the NCSLT Trusts..

New Jersey courts have acknowledged that entities purchasing debt, such as the Defendants, qualify as "consumer lenders" under the CFLA. The statutory language is intended to encompass a broad range of entities involved in consumer lending, emphasizing that the term "notes" should be interpreted in its ordinary meaning. This interpretation aligns with the legislative purpose of regulating all significant participants in the consumer lending process.

The District Court also mistakenly determined that the CFLA's licensing requirements do not apply to U.S. Bank as a "depository institution." However, Browne's claims against these entities arise from their involvement in the misrepresentations and unlawful conduct of the NCSLT Trusts, establishing a fraudulent co-venture.

The CFA prohibits various forms of unlawful commercial practices, including misrepresentation and fraud. The CFA is meant to be broad and remedial in nature. Courts have identified three essential elements for claims under the CFA: unlawful conduct by the defendant, ascertainable loss by the plaintiff, and a causal connection between the two.

The CFA's applicability extends to the acts of assignees involved in the collection of debts stemming from credit sales. Even in the absence of an implied private right of action under the NJCFLA, the Trust Defendants' misrepresentations about their authority to enforce a void debt constitute a

violation of the CFA. Notably, the courts have held that violations of statutes may serve as evidence of unconscionable practices under the CFA. The broad scope of the CFA ensures that actions relating to the sale of credit are included, and courts have expressly rejected the notion that collection activities fall outside its purview. Indeed, New Jersey courts have clarified that collecting or enforcing a loan is considered part of the "subsequent performance" of a contract, clearly within the CFA's reach.

Furthermore, Browne's situation diverges from cases like *DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 430 N.J. Super. 325, 339 (App. Div. 2013), where no ascertainable loss was established. Browne has demonstrably suffered a loss by payments he made on a void debt, a factor recognized by New Jersey courts as valid under the CFA. Even if payments were not made, the assertion of a void debt itself constitutes an ascertainable loss, as established in case law.

Ultimately, the Trust Defendants' enforcement of a void debt not only impacts Browne financially but also detrimentally affects his creditworthiness due to reporting to major credit agencies. As such, the claim under the CFA stands, given the clear unlawful conduct of the Trust Defendants alleged and the resulting ascertainable losses experienced by Browne.

# 7. Argument

## 7.1. Standard of Review

The standard of review for dismissal under FED. R. CIV. P. 12(b)(6) is *de novo. Phillips v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir. 2007); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006) ("We exercise plenary review over the grant of a motion to dismiss."). Thus, the Court owes no deference to the District Court's Order of dismissal and must "accept as true all well-pled factual allegations in the complaint . . . view[ing] them in the light most favorable to the plaintiff[]." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 182 (3d Cir. 2012) (citing *Anspach v. City of Phila.*, 503 F.3d 256, 260 (3d Cir. 2007)).

"A complaint survives dismissal if it contains sufficient factual matter, accepted as true, to 'state a claim . . . that is plausible on its face.'" *Mazo v. Way*, 551 F. Supp. 3d 478, 490 (D.N.J. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, a denial of leave to amend is reviewed for an abuse of discretion, and a review of the District Court's determination that ... amendment would be futile de novo. *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189

(3d Cir. 2016). In determining whether amendment would be futile, the Court should "apply the 'same standard of legal sufficiency' as would be applied to a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Finally, "[w]hen there are well-pleaded factual allegations," the Court must "assume their veracity," *Iqbal*, 556 U.S. at 662, 129 S.Ct. 1937, in addition to assuming the veracity of "all reasonable inferences that can be drawn from" those allegations, *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008), and, construing the allegations and reasonable inferences "in a light most favorable to the [plaintiff,]" *Id.*, the Court determines whether they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**7.2.    The Court Erred in Relying on the Deposit and Sale Agreement, a Document that was not Integral to the Amended Complaint**

The District Court's decision erred in relying on the Deposit and Sale Agreement for the 2007-1 NCT Trust to prove ownership when the document is not referenced in the First Amended Complaint. Though the Plaintiff does not dispute that the copy of the publicly filed Deposit and Sale Agreement for the 2007-1 NCT Trust is authentic, the Plaintiff's claims are not based on this document and the import of this document is misplaced. Documents not referenced in the complaint can be used in a motion to dismiss without converting to a motion for summary judgment when the Plaintiff's claims are

based on the document. *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 497 (E.D. Pa. 2018), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020). A document can also be used if it directly contradicts a necessary fact alleged in the complaint. *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013). That is not the case here, as the Deposit and Sale Agreement does not reference Browne's loan and thus, the facts in the complaint must prevail. *Doe v. Princeton University*, 30 F.4th 335, 342 (2022).

### 7.3. The District Court Erred in Finding Plaintiff's Factual Assertions Supporting Unjust Enrichment Implausible

The FAC plausibly alleges that the Trusts attempt to collect loans without proof of ownership. In dismissing the Plaintiff's claim for Unjust Enrichment, the District Court failed to accept the factual allegations and reasonable inferences drawn from the FAC as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The District Court's reliance on the Deposit and Sale Agreement for the 2007-1 NCT Trust to determine ownership of Browne's loan disregarded the Plaintiff's factual assertions and inferences. Therefore, the District Court erred and this Court should reverse that decision and deny the Defendants' Motion to Dismiss.

The Plaintiff asserts that the Deposit and Sale Agreement for the 2007-1 NCT Trust does not contradict any of the factual allegations in the FAC regarding the Defendants' inability to demonstrate that any particular Trust

owns Browne's specific loan. The presentation of the Deposit and Sale Agreement does not make the Plaintiff's allegations about the lack of ownership implausible; rather, it supports Browne's claims. *Id.*

At the pleading stage, Browne is only required to present sufficient facts in his Complaint to support a reasonable inference that the Defendants cannot prove ownership of the loans. He is not required to prove the probability of his allegations. *Twombly*, 550 U.S. 556. As the Supreme Court held, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Id.* (internal quotations omitted).

For a plausible claim of unjust \enrichment, Brown need only show that "[the] defendant received a benefit and that retention of that benefit .... would be unjust." *Caputo v. Nice-Pak Prod., Inc.,* 300 N.J. Super. 498, 507, 693 A.2d 494, 498 (App. Div. 1997) (quoting *VRG Corp. v. GKN Realty Corp.,* 135 *N.J.* 539, 554, 641 *A.*2d 519 (1994)). Further, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp.*, 135 N.J. at 554. The claim also depends on the Court finding that Browne does

not have a valid contract with any of the Defendant Trusts. C*nty. of Essex v. First Union Nat. Bank*, 186 N.J. 46, 55, 891 A.2d 600, 605 (2006).

Browne has adequately alleged the elements of an unjust enrichment claim. *See* FAC, at ¶¶ 143-147 (Appx122). The crux of Browne's complaint is that he paid money that he did not owe to the Defendants. The Defendants, which include the Trusts and others who participated in collection efforts were unjustly enriched by wrongly receiving and keeping Browne's funds. None of the Defendants could show the Trusts owned Browne's loan. Also, since they lacked a required license, receiving and keeping Browne's funds was also wrongful.

The FAC alleges that the Trusts collected loan payments from Browne without proof of ownership. Browne alleged specific factual details, including a Special Performance Review conducted in 2015, which found AES did not have any assignments in in its possession. FAC, ¶ 46-49 (Appx102). The FAC further explained that the assignments were missing because FMC did not have access to the actual loan records, making collection efforts difficult. The entities working on behalf of the Trusts lack the necessary paperwork to establish that specific loans were assigned to specific Trusts, leaving them without competent evidence to prove ownership. FAC, ¶ 46-49 (Appx102). FAC, ¶ 50-52 (Appx103).

Additionally, the FAC looked to the process used by the Trusts to collect on defaulted loans, which relies on various documents, including a Pool Supplement that references a schedule of loans. FAC, ¶ 66 (Appx106). According to the FAC, the Trusts do not possess the loan schedules allegedly attached to the Pool Supplement. Instead, in litigation, the Trusts ruse a "placeholder" document to identify loans, along with an excerpt of a "roster" that is attached to the Pool Supplement, purporting to support the assignment of loans. FAC, ¶ 67-68 (Appx107).

The FAC also alleges that the Trusts and the non-Trust entities working on their behalf wrongfully collected monies based on the collection of void debt from the Defendant Trusts' and non-Trust parties because they did not have a license under the CFLA, rendering the debt void and uncollectible. *Id.,* ¶ 146 (Appx122). Without a proper license to do business in the State of New Jersey, any monies collected from the borrowers without a license was illegal and unjust. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 18 (2011) ("A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.") The Defendants had no legal right to be assigned the contract or collect any amount. N.J.S.A. 17:11C-33(b). As explained by Comment e to

Restatement (Third) of Restitution and Unjust Enrichment, §18, where the action is "legally unenforceable" (which describes unlawful debt collection) restitution most certainly *is* required: "The need to remedy this misapplication of legal process—so that the law not stultify itself by requiring what it has declared may not be required—constitutes an important reason for restitution that is independent of the individualized equities of the parties."

**7.4. The Statutory History of the Consumer Finance Licensing Act Indicates that the Legislature Intended to Provide an Implied Private Right of Action**

The New Jersey Consumer Finance Licensing Act declares "[n]o person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." N.J.S.A. 17:11C-3(a).

> A consumer lender who violates or participates in the violation of any provision of section 3 . . . of this act, *shall be guilty of a crime of the fourth degree*. A contract of a loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes a crime of the fourth degree under this section, *shall be void and the lender shall have no right to collect or receive any principal, interest or charges*. . . ."

N.J.S.A. 17:11C-33(b) (emphasis added) .

Defining unlicensed activity as a consumer lender as a fourth-degree crime is consistent with the legislative intent of the NJCFLA, a remedial consumer protection statute designed to combat fraud, usury, and other criminal and predatory behavior in the consumer credit industry in New Jersey.

Remedial consumer protection statutes like the NJCFLA are enacted to address holes in contemporaneously existing law. And the purpose of the NJCFLA is illustrated by, *inter alia*, the provisions requiring annual criminal background for licensees and ensuring ongoing compliance with the same, as well as those provisions that evidence the NJCFLA's history of private enforcement by aggrieved consumers. *See, e.g.,* N.J.S.A. 17:11C-7(e); N.J.S.A. 17:11C-11; N.J.S.A. 17:11C-33(b); N.J.S.A. 17:11C-43.

N.J.S.A. 17:11C-18 codifies the enforcement power granted to the Commissioner of Banking and Insurance; however, the mechanism of state enforcement was not intended to limit the individual rights of aggrieved consumers. Indeed, if the Legislature intended for the NJCFLA to exclude any and all private enforcement, the Legislature would have said so—either through one of the statutory progressions of the NJCFLA or in one of its many revisions. As confirmed by the New Jersey Supreme Court, N.J.S.A. 17:11C-33(b) "allow[ed] for treble damages by aggrieved consumers" when it was embodied in the Consumer Loan Act. *See Lemelledo v. Benefit Mgmt. Corp.*, 150 N.J. 255, 271-72 (1997). Similarly, the prior and subsequent statutory revisions provide no support for the conclusion that the Legislature intended to eliminate that private right of action by also providing for state enforcement.

The present-day iteration of the NJCFLA originated as the New Jersey Small Loan Law ("NJSLL") or Small Loan Act. The NJSLL was enacted in 1914 to address the widely predatory and substantially unregulated consumer loan industry in New Jersey, primarily focusing on *small loans* to natural persons.

> The small loan business has long been the subject of study, legislation and judicial determination. *See Gallert, Hilborn and May, Small Loan Legislation* (Russell Sage Foundation, 1932); *Hubachek, Annotations on Small Loan Laws* (Russell Sage Foundation, 1938); 8 *Law and Contemporary Problems* (Winter, 1941). New Jersey was one of the five large industrial states which early adopted general acts designed to regulate and control the business of making small loans. Thus *P.L.* 1914, *c.* 49 provided for the licensing of small loan companies and granted power to the Commissioner of Banking and Insurance to reject an application for license because of lack of character or fitness of the applicant. In 1916 the Russell Sage Foundation submitted its first draft of a Uniform Small Loan Law which adopted the regulatory philosophy of the New Jersey act and some of its provisions.

*Family Fin. Corp. v. Gough*, 10 N.J. Super. 13, 19 (App. Div. 1950); *see also Ryan v. Motor Credit Co.*, 132 N.J. Eq. 398, 401 (1942) ("However remedial our Small Loan Act may be . . . it was certainly not designed to reward or encourage fraud. The underlying reason for the drastic provisions of the act for the protection of the borrower is his credulity and susceptibility to oppression by reason of his necessitous circumstances."

The NJSLL—like the NJCFLA—was meant to police the consumer credit industry and allowed for enforcement by the Commissioner as well as individual consumers. *See Gough*, 10 N.J. Super. at 21 ("[T]he Small Loan Law was intended to and does afford to the Commissioner power to limit the number of licenses in a community."); *see also Edelstein v. Hub Loan Co.*, 130 N.J.L. 511 (1943) (Where the Court of Errors and Appeals reversed a judgment in favor of a plaintiff borrower in an action under the NJSLL asserting that the lender overcharged the borrower during repayment. Under the NJSLL, the plaintiff was awarded damages equaling the total of his payments.). Though, determinative criteria for licensure was within the purview of the Commissioner, "dependent upon their relation to the objectives of the Small Loan Act in light of its history and purpose, it is difficult to see how better the Commissioner can execute the legislative policy than by looking to the needs of the community. . . ." *Family Fin. Corp. v. Gaffney*, 11 N.J. 565, 572 (1953).

The NJSLL was superseded by the New Jersey Consumer Loan Act ("NJCLA") in 1962. The NJCLA's espoused goal was to "prohibit[] deceptive lending practices generally, N.J.S.A. 17:10-13 (replaced by N.J.S.A. 17:11C-20)." *Lemelledo v. Benefit Mgmt. Corp.*, 150 N.J. 255, 271 (1997). "If a violation of the CLA [was] proven, the typical remedy, obtainable by the Department of Banking and Insurance ***or by individual consumers, is voiding***

*of the contract*," though the NJCLA *also provided for awards of damages to aggrieved consumers. Lemelledo*, 150 N.J. at 272 (emphasis added). The codified statutory mechanism of enforcement by which an individual consumer voided an unlawful loan contract and/or pursue treble damages was N.J.S.A. 17:11C-33(b)—the same provision of the same statute cited by Browne here. *Ibid.*

Between 1962 and 1983, the NJCLA was amended seven times—many of the amendments added mortgage-based provisions, such as the Secondary Mortgage Loan Act of 1970. *See* 1996 N.J. ALS 157; 1996 N.J. Laws 157; 1996 N.J. Ch. 157; 1997 N.J. A.N. 2513.

"On January 8, 1997, the Governor signed the New Jersey Licensed Lenders Act, which combine[d] the [NJ]CLA with two mortgage-related statutes.[1] *L.* 1996, *c.* 157 (codified at N.J.S.A. 17:11C-1 to -49)." *Lemelledo*, 150 N.J. at 262 n.1. When the NJCLA was combined with the New Jersey Residential Mortgage Lending Act ("NJRMLA"), N.J.S.A. 17:11C-51 to -89, under the umbrella of the Licensed Lenders Act ("NJLLA"), the consumer-lending based provisions formerly known as the NJCLA became known as the "Consumer Finance Licensing Act."

---

[1] The New Jersey Residential Mortgage Lending Act ("NJRMLA"), N.J.S.A. 17:11C-51 to -89.

Like the NJSLL and NJCLA the NJCFLA (under the umbrella of the NJLLA) allowed for a private right of action by individual consumers in addition to the enforcement remedies of the Commissioner. Though N.J.S.A. 17:11C-18 retains a codification of the Commissioner's authority to oversee licensure under the NJCFLA (as it did under the NJLLA), it does not disallow private actions by aggrieved consumers—nor has it ever. Prior to 2014, aggrieved consumers were always afforded an implied private right of action *in addition to* the Commissioner's authority to oversee licensure and pursue independent prosecutions. In fact, N.J.S.A. 17:11C-33(b) continues to explicitly allow for treble damages—a remedy not included under the Commissioner's authority in N.J.S.A. 17:11C-18. N.J.S.A. 17:11C-18(i) further limits the Commissioner's authority to civil penalties "not exceeding $25,000." In the absence of a private right of action, an unlicensed consumer lender could limit liability on consumer loans exceeding $25,000 since penalties are capped at $25,000.

In 2010, the NJLLA, N.J.S.A. 17:C-1 to -49, was divided, separating the NJRMLA, N.J.S.A. 17:11C-51 to -89, from the NJCFLA. The NJRMLA and NJCFLA were now their own respective standalone statutes. Subsection 18 remained combined with the consumer lending provisions, as it had been for several decades. And reasonably so—the provisions of subsection 18 relate

only to the Commissioner's authority relative to licensure to act as a "consumer lender" or "sales finance company" and do not address mortgages or real property. *See* N.J.S.A. 17:11C-2; N.J.S.A. 17:11C-3; N.J.S.A. 17:11C-18.

Post 2010, the first case to address the NJCFLA was *Veras v. LVNV Funding, LLC*, No. 13-1745 (RBK/JS), 2014 U.S. Dist. LEXIS 34176 (D.N.J. Mar. 17, 2014)—which was also cited by the District Court's in April 30th Order. All case law post 2014 in the Superior Court and/or the District Court which analyzes the private right of action under the NJCFLA can be traced back to *Veras*.

The first cases in the Superior Court to address the private right of action under the NJCFLA were *New Century Fin. v. Trewin*, 2018 N.J. Super. Unpub. LEXIS 1688 (Ch. Div. May 24, 2018) and *Woo-Padva v. Midland Funding LLC*, 2022 N.J. Super. Unpub. LEXIS 96 (Law Div. Jan. 21, 2022). *Woo-Padva* cites to the District Court December 22, 2021 Order and Opinion in this action, dismissing the Complaint for lack of Article III standing—*Browne v. Nat'l Collegiate Student Loan Tr.*, No. 21-11871 (KM) (JSA), 2021 U.S. Dist. LEXIS 244537, at *8 (D.N.J. Dec. 22, 2021)—who in turn cites to *Jubelt v. United Mortg. Bankers, Ltd.*, Civil Action No. 13-7150 (ES) (MAH), 2015

U.S. Dist. LEXIS 84595, at *14 (D.N.J. June 30, 2015), with *Jubelt* citing *Veras*.

In addressing the private right of action under the NJCFLA, the District Court in *Veras* reasoned that in order to determine whether the NJCFLA implies a private right of action, "the Court must consider . . . **whether there is any evidence that the Legislature intended to create a private cause of action under the statute and whether implication of a private cause of action in this case would be consistent with the underlying purposes of the legislative scheme**." *Id.* (emphasis added) (quoting *In re Resolution of State Com. of Investigation*, 108 N.J. 35, 41 (1987) (internal quotation marks omitted)). Indeed, "**the primary goal in determining whether a statute implies a right of action has almost invariably been a search for the underlying legislative intent**." *Veras*, No. 13-1745 (RBK/JS), 2014 U.S. Dist. LEXIS 34176, at *24 (quoting *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 272-73 (2001) (internal quotation marks omitted)); *see also Liberty Bell Bank v. Deitsch*, No. 08-0993, 2008 U.S. Dist. LEXIS 71303, at *3 (D.N.J. Sept. 9, 2008) ("This factor alone, without regard to the others, has been dispositive in recent cases.").

With respect to the legislative intent of the NJCFLA, the NJCFLA's intended mechanisms of enforcement, and the history of the same, the Court

must certainly consider the NJCFLA's predecessors, discussed *supra*, for context. However, the court in *Veras* did not analyze the legislative/statutory history or the legislative intent of the NJCFLA. *Veras*'s determination that no implied private right of action existed in the NJCFLA was based only on the existence of the Commissioner's enforcement abilities under subsection 18. But, again, N.J.S.A. 17:11C-18 had always existed in conjunction with private enforcement remedies, *e.g.*, N.J.S.A. 17:11C-33(b). Thus, the result in *Veras* is contrary to a plain reading of the NJCFLA and canons of statutory construction.

Prior to *Veras*, the courts had consistently held that the various iterations of the law allowed for an implied private right of action. And the Legislature is presumed to know the law. "It is assumed that the Legislature is 'thoroughly conversant with its own legislation and the judicial construction of its statutes.'" *Ayres v. Daucher*t, 130 N.J.Super. 522, 528 (App.Div.1974) (quoting *Brewer v. Porch*, 53 N.J. 167, 174 (1969)); *see also David v. Gov't Emps. Ins. Co*., 360 N.J. Super. 127, 143 (App. Div. 2003). If the Legislature wanted to (and/or intended to) remove the private right of action, it would have done so over the course the several amendments to the statute described herein.

Moreover, *In re Resolution of State Com. of Investigation, supra*—cited by *Veras*—addressed and analyzed a statute where the "extrapolation of the implicit private cause of action . . . would frustrate, rather than further, the legislative scheme that underlies N.J.S.A. 52:9M-15(a)." *In re Resolution of State Com. of Investigation*, 108 N.J. 35, 36-37, 44 (1987). *In re Resolution* analyzed N.J.S.A. 52:9M-15(a)—which governs improper disclosures of information related to investigations into crime by the State Commissioner of Investigation ("SCI"). Investigation of such improper disclosures by private individuals would frustrate the legislative purpose of the statute itself, i.e., improper disclosures on confidential information related to ongoing criminal investigations.

> In order to ascertain . . . whether SCI personnel have made unlawful disclosures during the course of their investigation of the plaintiffs, protracted discovery into the nature and substance of confidential investigatory communications would be essential . . . this kind of discovery would frustrate the Legislature's attempt to facilitate SCI investigations."

*In re Resolution*, 108 N.J. at 46

Here, with respect to the NJCFLA and enforcement by private individuals, there is no frustration of the NJCFLA's purpose of policing the consumer credit industry in New Jersey. There was no basis for the *Veras* court to reason that the separation of the NJRLMA from the rest of the current

NJCFLA also abrogated the NJCFLA's implied private right of action without any statement by the legislature. The reading of the private right of action out of the NJCFLA by *Veras* was simply not rooted in an examination of the NJCFLA's legislative intent and history, as *Veras* acknowledged, was the linchpin in determining whether an implied private right of action existed.

Nothing in the NJCFLA suggests that the legislature intended the Act's remedies to be unavailable to private citizens and nothing suggests that the legislature had any disagreement with the Court decision interpreting the law to provide a private right of action. Interpreting the NJCFLA as the legislature intended requires viewing the NJCFLA in its historical context, *i.e.*, acknowledging that the statute has always afforded private enforcement.

### 7.5. Notes/Debts

In granting Defendants' Motions to Dismiss, the District Court reasoned that "Defendants do not fall into the categories of a consumer lender or sales finance company as those terms are defined in the [NJCFLA]." Order p. 4 (Appx6). The basis for the District Court's reasoning is that the loans at issue ostensibly do not constitute 'notes' and that "New Jersey courts have held that 'notes' are distinct from 'debts.'" Order p. 4 n. 5 (citing *Woo-Padva* at *6). However, the District Court's (and *Woo-Padva*'s) reasoning has been rejected, both in the District Court and in the Superior Court of New Jersey.

[T]he NJCFLA requires a person or entity that qualifies as a "consumer lender" or "sales finance company" to first obtain a license from the NJDOBI. N.J. Stat. Ann. § 17:11C-3(a). A "consumer lender" is a person or entity that, among other things, "directly or indirectly engag[es] . . . in the business of buying, discounting or endorsing notes" . . . In analyzing whether this definition covered debt buyers, the Superior Court in *Woo-Padva* stated that "notes" were distinct from "debts," but did not define either term. The Superior Court relied on three unpublished cases from Ohio and Michigan to support its assertion, and pointed to the fact that a New Jersey statute, N.J. Stat. Ann. § 12A:3-118, "explicitly provides the statute of limitations for 'an action to enforce the obligation of a party to pay a note'" while another statute, N.J. Stat. Ann. § 2A:14-1 "provides the statute of limitations to enforce claims based on a breach of contract that generally apply to credit card debts."

Respectfully, the Court is not persuaded by this line of reasoning. Courts in this District have invoked that part of the NJCFLA—the part reading: "directly or indirectly engag[es] . . . in the business of buying, discounting or endorsing notes"—when classifying debt collection practices as falling within the "consumer loan business." This Court will do the same and find that as a purchaser of debt, DAP III meets the definition of "consumer lender" required to obtain a license under the NJCFLA.

*Valentine v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 2:20-cv-14152

(WJM), 2022 U.S. Dist. LEXIS 118399, at *13-14 (D.N.J. July 6, 2022)

(internal citations omitted).

The reasoning in *Woo-Padva* was also criticized in the Superior Court:

The Court must interpret and apply statutory text according to the plain, ordinary meaning of its terms. It must also construe such text in the context of relevant definitions or other provisions of the statute examined in their entirety. It is required to interpret in a manner that is consonant with the statutory purpose and that does not produce an absurd or nonsensical result.

The Court finds that the plain, ordinary meaning of the term "notes", as used in this statutory definition, encompasses a debt obligation arising — as here — from an underlying credit card account. A dictionary definition of "note" is a "written promise to pay a debt." *Note*, Merriam-Webster, https://www.merriam-webster.com/dictionary/note (last visited April 20, 2023). An open-ended credit card agreement of the type Razor and its predecessor assignees acquired is such a written promise to pay a debt.

[The NJCFLA] captures within the definitions of "consumer lender" and "consumer loan business" a wide range of other participants in consumer lending . . . the statutory coverage extends not only to those making or extending loans, but those that solicit such loans, those that assist in the procurement or negotiation of the same and those that purchase or acquire "notes." The purpose of the second sentence of the definition [of consumer loan business] is pellucid — to expand the scope of the statute and its licensure and other requirements well beyond the entities that actually provide the credit ab initio.

. . . .

Indeed, a contrary interpretation of the term "notes" — for example, an interpretation that would limit the scope of the term to negotiable promissory notes subject to the Uniform Commercial Code — would produce an absurd, and the Court finds, unintended result . . . .

In light of the breadth of the definition as a whole, to hold that the term "notes" does not encompass a debt obligation arising from breach of a credit card agreement would not only limit the scope of "notes" in a manner that is inconsistent with the ordinary meaning of the term. Such a conclusion would also frustrate the manifest purpose of the statute to require licensure of, and to impose certain substantive requirements on, all essential participants in the "consumer loan business."

. . . This Court has examined the federal cases cited by the movant (which are also unpublished) and the contrary decision of a different New Jersey trial-level court in *Woo Padva* . . . [The Court] disagrees with the conclusions reached in that case for the reasons set forth herein.

*McQueen v. Fein, Such, Kahn & Shepard, P.C.*, ESX-L-1439-22, 2023 N.J. Super. Unpub. LEXIS 640, at *12-16 (Law Div. April 26, 2023) (internal citations omitted).

By misrepresenting that they had the right to enforce a void debt, the Trust Defendants committed a "commercial practice that is unconscionable or abusive, deception, fraud, false pretense . . . misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with . . . the subsequent performance" of the sale of merchandise (discussed further *infra*). *See* N.J.S.A. 56:8-2.

Lastly, the District Court reasoned that because U.S. Bank and Transworld Systems are "depository institutions," "they cannot be subject to

the licensure requirements set forth in the CFLA." Opin. 4 (citing N.J.S.A. 17:11C-6). However, Browne's theory of relief does not presuppose that U.S. Bank and Transworld Systems be licensed themselves, because they were further the misrepresentations and criminal conduct of the NCSLT Trusts, thereby engaging in a fraudulent joint co-venture in violation of the CFA.

**7.6. The Trust Defendants Committed Fraud in Connection with the Subsequent Performance of the Sale of Merchandise by Enforcing a Void Account Arising from the Sale of Credit**

### *7.6.1. The Elements of a Claim Under the Consumer Fraud Act*

The CFA broadly prohibits "the act, use or employment by any person of any unconscionable commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . ." N.J.S.A. 56:8-2. Courts have consistently held the CFA is remedial and should be broadly construed to effect its purposes. *See Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 522 (2010) ("Because it is 'remedial legislation,' the CFA is 'construe[d] liberally to accomplish its broad purpose of safeguarding the public."); *Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 139 (1999) ("Because it is a remedial statute, its provisions are construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.").

"In analyzing claims under the CFA, [the New Jersey Supreme Court] ha[s] found that there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007).

### 7.6.2. The Consumer Fraud Act Covers Assignees Collection Efforts Stemming from a Sale of Credit

Even assuming *arguendo* that no implied private right of action exists under the NJCFLA, Defendant's representation that they had the legal right, authority, and/or ability to enforce a void debt constitutes a misrepresentation, as well as an unconscionable and abusive commercial practice, in connection with the subsequent performance of the sale of merchandise. *See* N.J.S.A. 56:8-2. Indeed, "[v]iolation of a statute or regulation can serve as evidence of unconscionable practices under the Consumer Fraud Act." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 289 N.J. Super. 489, 502 (App. Div. 1996), *aff'd*, 150 N.J. 255 (1997); *see also Wozniak v. Pennella*, 373 N.J. Super. 445 (App. Div. 2004) (CFA applied to a residential landlord violating municipal rent control ordinance by charging excessive rents).

The CFA applies to the sale of credit. *See Lemelledo, supra*, 150 N.J. at 265 ("By its terms, the CFA is applicable to the provision of credit."); *see also Jefferson Loan Co., Inc. v. Session*, 397 N.J. Super. 520, 533 (App. Div. 2008) (where the court held that the CFA applied to an assignee of a credit contract and the assignee's acts were in connection with "the subsequent performance of the assigned contract"—collection of the debt); *Pollitt v. DRS Towing, LLC*, No. 10-1285 (AET), 2011 U.S. Dist. LEXIS 41825, at *16-17 (D.N.J. Apr. 15, 2011) ("[A]s an assignee, Wachovia would be subject to the CFA to the extent that any of its practices constituted an unlawful act under the CFA."). Since the CFA applies to a sale of credit, an assignee of the credit contract is also subject to the CFA.

The District Court's view that the CFA does not apply to assignee debt collectors ignores that the CFA extends to "subsequent performance" of the sale of merchandise and that the New Jersey Supreme Court has roundly rejected the "argument that the collection activities of a servicing agent . . . do not amount to the 'subsequent performance' of a loan, a covered activity under the CFA." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 582 (2011).

In reasoning that the Trust Defendants' misrepresentations regarding the status of the void credit account and the amount owed did not violate the CFA, the District Court relied on *Ogbin v. GE Money Bank*, No. 10-

5651(NLH)(AMD), 2011 U.S. Dist. LEXIS 64735 (D.N.J. June 13, 2011),

*Boyko v. Am. Int'l Grp., Inc.*, No. 08-2214 (RBK/JS), 2009 U.S. Dist. LEXIS

119339 (D.N.J. Dec. 23, 2009), and *DepoLink Court Reporting & Litig.*

*Support Servs. v. Rochman*, 430 N.J. Super. 325, 339 (App. Div. 2013).

However, the District Court's reliance on federal decisions is misplaced here,

because "a federal court's decision on a question of New Jersey law is not

binding on any court in this State." *Mathiesen v. Moleski*, No. A-0365-10T3,

2011 N.J. Super. Unpub. LEXIS 2187, at *26 (App. Div. Aug. 12, 2011)

(quoting Pressler & Verniero, *Current N.J. Court Rules*, comment 3.5 on

*R.* 1:36 (2011)); *see also Dewey v. R.J. Reynolds Tobacco Co.*, 121 N.J. 69, 80

(1990); *Shaw v. City of Jersey City*, 346 N.J. Super. 219, 229 (App. Div.

2002), *rev'd on other grounds*, 174 N.J. 567 (2002).

     Interpreting the application of the CFA is undoubtedly a question of

New Jersey law. *Ogbin* and *Boyko* are federal cases decided before the New

Jersey Supreme Court decided *Gonzalez, supra*. For those reasons alone,

*Ogbin* and *Boyko* cannot control here or overrule *Gonzalez*. "[C]ollecting or

enforcing a loan, whether by the lender or its assignee, constitutes the

'subsequent performance' of a loan, an activity falling within the coverage of

the CFA." *Gonzalez*, 207 N.J. at 577-78. The holding in *Gonzalez* is

purposefully broad and there is no indication that the New Jersey Supreme

Court intended to narrow the holding in *Gonzalez* based on facts specific to that case.

Despite being decided two years after *Gonzalez*, *DepoLink*, *supra* (an Appellate Division decision from 2013) does not analyze or even mention the holding in *Gonzalez*, but rather, cites *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 847 (D.N.J. 2011), and *Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 722-723 (D.N.J. 2008) *See DepoLink*, 430 N.J. Super. at 339. *DepoLink* does not provide any insight as to the reasoning for citing two federal district court cases (as opposed to a later-decided binding case from the New Jersey Supreme Court) when interpreting an issue of state law. *DepoLink* is also distinguishable from the case at bar in several material respects; first, the CFA claimant in *DepoLink* was found not to be a "consumer" because he was acting in his capacity as a sole proprietor of a law firm. *See DepoLink*, 430 N.J. Super. at 335. Here, it is undisputed that Browne is a consumer who, at all times relevant to this action, was acting in his personal capacity.

Secondly, the CFA claimant in *DepoLink* argued that the alleged violations of the CFA were strict liability offenses and, thusly, arose from a violation of a regulation promulgated under the CFA. The court in *DepoLink* reasoned that "defendant[/counterclaimant] has not cited any regulations under

the CFA which either the plaintiff or the collection agency violated. While defendant points to the collection agency's violation of the FDCPA, it is not a regulation under the CFA." *DepoLink*, 430 N.J. Super. at 338. Here, Browne has not alleged that the Trust Defendants' violations of the CFA arose from a violation of a regulation promulgated under the CFA. Rather, Browne alleges an affirmative misrepresentation that Browne's alleged debt was valid and enforceable, that the Trust Defendants were legally authorized and/or able to enforce Browne's alleged debt, and that the Trust Defendants misrepresented the lawful creditor of Browne's alleged debt—which is also an unconscionable and abusive commercial practice. The Trust Defendants' fraudulent misrepresentations induced Browne into making payments to on the debt. *To wit*, Plaintiff suffered an ascertainable loss as a result of the Trust Defendants' unlawful conduct—the collection of a void debt.

Finally, *DepoLink*'s basis for finding no violation of the CFA was rooted entirely in the reasoning that "[t]he collection agency's contacts with defendant were not an offer to sell merchandise." *See DepoLink*, 430 N.J. Super. at 339. *DepoLink* did not analyze or mention subsequent performance under the CFA, by an assignee of the debt or otherwise—and it is difficult to rectify the holding in *DepoLink* with the holding in *Gonzalez*, a case that analyzes subsequent performance under the CFA by an assignee of the debt

and overrides *DepoLink*, if viewed as addressing subsequent performance by an assignee. *Compare DepoLink*, 430 N.J. Super. at 339 ("Debt collection activities on behalf of a third party who may have sold merchandise are not unconscionable activities 'in connection with the sale' of merchandise."), *with Gonzalez*, 207 N.J. at 577-78, 582 ("[C]ollecting or enforcing a loan, whether by the lender or its assignee, constitutes the 'subsequent performance' of a loan, an activity falling within the coverage of the CFA . . . . We roundly reject defendants' argument that the collection activities of a servicing agent . . . do not amount to the 'subsequent performance' of a loan, a covered activity under the CFA.").

### 7.6.3. *Browne Suffered an Ascertainable Loss Due to the Trust Defendants' Enforcement of Void Consumer Credit Contract*

Browne's payments to the Trust Defendants present another distinguishing factor from *Depolink*—where "at the summary judgment stage [defendant] failed to establish an ascertainable loss," because "defendant never paid any money to the collection agency." *DepoLink*, 430 N.J. Super. at 341. Here, Browne made payments on the void account.

Even if Browne did not make any payments to PRA on the void account, Browne would still have an ascertainable loss since the Trust Defendants enforced a void debt. In *Cox v. Sears Roebuck & Co.*, the New Jersey Supreme Court "conclude[d] that an improper debt . . . against a consumer-fraud

plaintiff may constitute a loss under the [CFA], because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act." 138 N.J. 2, 23 (1994); *see also Hoffman v. Asseenontv.Com, Inc.*, 404 N.J. Super. 415, 428-29 (App. Div. 2009) (In *Hoffman*, the Court held that an improper credit card authorization was not an ascertainable loss under the CFA because it was not a "charge," but reasoned that a charge on a credit account— even if unpaid—constitutes an ascertainable loss under the CFA; the factors considered by the court in *Hoffman* included the loss of creditworthiness and overall effect on credit due to the existence of the improper debt—factors highly relevant here).

The plaintiff in *Cox* had incurred a debt for home repairs under a contract with Sears by which Sears had also recorded a lien on the plaintiff's property. Analogous to the instant action, the plaintiff in *Cox*, "by virtue of his contract with [a merchant] . . . incurred a legal obligation in the form of a debt." *Cox*, 138 N.J. at 23. However, in *Cox*, "the debt and the lien, although losses to Cox . . . were not the result of [the merchant's] violation of the [CFA]. Rather, those losses occurred before any consumer fraud took place." *Id*. Thus, *Cox* held that even though an improper debt constitutes a loss under the CFA, the plaintiff had failed to show causation. *See Cox*, 138 N.J. at 23. Similarly, in *Depolink*, the "defendant failed to establish a causal relationship

between the collection agency's conduct and any ascertainable loss he may have suffered." *Id.* Here, the causal nexus between Browne's ascertainable loss and the Trust Defendants' unlawful conduct is clear: but for the Trust Defendants' undisputed violations of the NJCFLA and affirmative misrepresentations to Browne, Browne would not have made payments on void debts. Browne would also not have been harmed by the assertion of a void debt, having his creditworthiness negatively impacted by the reporting of the void debts to the three major credit reporting agencies, among other harms.

A void debt/contract is of no legal significance and cannot be enforced. It is no longer owed. *See Maltese v. Twp. of N. Brunswick*, 353 N.J. Super. 226, 242 (App. Div. 2002); *Bauer v. Newark*, 7 N.J. 426, 435 (1951); *see also D'Agostino v. Maldonado*, 216 N.J. 168, 194 n.4 (2013) ("A void contract is '[a] contract that is of no legal effect, so that there is really no contract in existence at all.'") (quoting *Black's Law Dictionary* 374 (9th ed. 2009)). Thus, there was no longer a debt for the Trust Defendants to enforce.

## 8. Conclusion

For the foregoing reasons, the District Court's Order Dismissing

Browne's First Amended Complaint should be reversed.

<div style="margin-left: 50%;">

Respectfully submitted,

Kim Law Firm LLC

*s/Yongmoon Kim*
Yongmoon Kim
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone: 201-273-7117

</div>

**CERTIFICATION OF BAR MEMBERSHIP**

I certify that I am a member in good standing of the bar of the United

States Court of Appeals for the Third Circuit.

*s/ Yongmoon Kim*
Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax: 201-273-7117

## CERTIFICATE OF COMPLIANCE

I hereby certify, in reliance on the word count of the word-processing system used to prepare the document, that this brief complies with the Federal and Local Rules in that it contains 10,198 words, was prepared in Microsoft Word, and produced with a proportional serif 14-point font. I further certify that the text of the electronic brief is identical to the text in the paper copies. I further certify that version 4.18.24080.9 of the Windows Security program has been run on the electronic brief, and no virus was detected.

<div align="right">

*s/ Yongmoon Kim*
Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone: 201-273-7117

</div>

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record for all parties to this appeal are

Filing Users of the Court's Electronic Case Filing (ECF) service, and that on

this 11th day of October 2024, I caused the Brief of Plaintiff-Appellant Lesroy

E. Browne and Volume I and Volume II of Appellant's Appendix to be served

on counsel of record for all parties via the ECF service.

Christopher B. Fontenelli
R. James DeRose
LOCKE LORDE LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
*Attorneys for Defendants Counsel for National Collegiate Student Loan Trust a/k/a National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3 and National Collegiate Student Loan Trust 2007-4*

Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, NY 10281
*Attorneys for Defendant U.S. Bank National Association*

Aaron R. Easley
Justin H. Homes
SESSIONS, ISRAEL & SHARTLE, LLC
3 Cross Creek Drive
Flemington, NJ 08822
*Attorneys for Defendant Transworld Systems, Inc.*

Christopher Borchert
Karl Geercken
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
*Attorney for Wilmington Trust Company*

<u>*s/ Yongmoon Kim*</u>
Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax: 201-273-7117

# United States Court of Appeals

*for the*

# Third Circuit

◆

No. 24-1896

LESROY E. BROWNE,

*on behalf of himself and those similarly situated,*

*Appellant- Plaintiff.*

– v. –

NATIONAL COLLEGIATE STUDENT LOAN TRUST, also known
as National Collegiate Master Student Loan Trust I;
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1;

*(For Continuation of Caption See Inside Cover)*

*Appellees-Defendants.*

ON APPEAL FROM AN ORDER ENTERED IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY IN CASE NO. 2:22-
CV-02713 BEFORE THE HONORABLE MADELINE COX ARLEO, U.S.D.J.

## JOINT APPENDIX
## VOLUME I of II (Appx1-Appx8)

Yongmoon Kim
Philip D. Stern
Mark Jensen
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
(201) 273-7117
*Attorneys for Plaintiff-Appellant Lesroy
E. Browne*

NATIONAL COLLEGIATE STUDENTLOAN TRUST 2004-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2004-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2005-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2005-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2005-3;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-3;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2006-4;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-1;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-2;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-3;
NATIONAL COLLEGIATE STUDENTLOAN TRUST 2007-4;
WILMINGTON TRUST CO, as Trustee for National Collegiate Student Loan
    Trust;
US BANK NA, in its Role as Special Servicer for the National Collegiate
Student Loan Trust;
TRANSWORLD SYSTEMS INC,

*Appellees-Defendants.*

Scott C. Borison
BORISON FIRM, LLC
1400 S. Charles Street
Baltimore, Maryland 21230
Telephone: (301) 620-1016
scott@borisonfirm.com

*Attorneys for Plaintiff-Appellant Lesroy E. Browne*

Christopher B. Fontenelli
R. James DeRose
LOCKE LORDE LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
*Attorneys for Defendants Counsel for National Collegiate Student Loan Trust a/k/a National
Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust 2003-1,
National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2,*

*National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3 and National Collegiate Student Loan Trust 2007-4*

Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, NY 10281
*Attorneys for Defendant U.S. Bank National Association*

Aaron R. Easley
Justin H. Homes
SESSIONS, ISRAEL & SHARTLE, LLC
3 Cross Creek Drive
Flemington, NJ 08822
*Attorneys for Defendant Transworld Systems, Inc.*

Christopher Borchert
Karl Geercken
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
*Attorney for Wilmington Trust Company*

# TABLE OF CONTENTS

Notice of Appeal (ECF No. 73)
May 11, 2024 ..................................................................................Appx1

Letter Order granting Defendants' Motions to Dismiss (ECF No. 72)
April 30, 2024 ...............................................................................Appx3

Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
ykim@kimlf.com

Scott C. Borison (admitted *pro hac vice*)
BORISON FIRM LLC
1400 S. Charles Street
Baltimore, Maryland 21230
Tel. (301) 620-1016
Fax. (302) 620-1018

Christina Henry (admitted *pro hac vice*)
HENRY & DEGRAFF, P.S.
787 Maynard Avenue S
Seattle, Washington 98104
Tel. (206) 330-0595
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESROY E. BROWNE, *on behalf of himself and those similarly situated,*<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST A/K/A NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 2:22-cv-02713-MCA-JSA<br><br><br>**NOTICE OF APPEAL** |

     **NOTICE** is hereby given that Plaintiff Lesroy E. Browne hereby appeals to the United

States Court of Appeals for the Third Circuit, from the District Court's Order entered on April

30, 2024 (ECF No. 72) dismissing Plaintiff's Amended Complaint and each and every aspect

thereof.

Dated: May 11, 2024                          Respectfully Submitted,

                                             *s/Yongmoon Kim*
                                             Yongmoon Kim
                                             Kɪᴍ Lᴀᴡ Fɪʀᴍ LLC
                                             *Attorneys for Plaintiff Lesroy E. Browne*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

April 30, 2024

VIA ECF

## LETTER ORDER

Re:   **Lesroy E. Browne, on behalf of himself and those similarly situated**
      **v. National Collegiate Student Loan Trust, et al.**
      **No. 22-2713**

Dear Litigants:

Before the Court are the following Motions to Dismiss Lesroy E. Browne's ("Plaintiff") First Amended Class Action Complaint (the "Amended Complaint"), ECF No. 1.1: (1)  The Trust Defendants' Motion, ECF No. 44;[1] (2) Defendant U.S. Bank National Association's ("U.S. Bank") Motion, ECF No. 46; (3) Defendant Transworld Systems Inc.'s ("TSI") Motion, ECF No. 43; and (4) Defendant Wilmington Trust Company's ("Wilmington," and collectively, "Defendants") Motion, ECF No. 45.[2]  Plaintiff opposes all Motions.  ECF No. 58.  For the reasons explained below, all Motions are **GRANTED**.

### I.   BACKGROUND
#### A.  Factual Background

In 2007, Plaintiff entered into a student loan agreement with JP Morgan Chase Bank (the "Loan").  Am. Compl. ¶ 84.[3]  The Loan was serviced by non-party Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("AES").  Id. ¶¶ 1, 4, 7, 45.2.  Plaintiff

---

[1] The "Trust Defendants" consist of National Collegiate Student Loan Trust I (incorrectly named as "National Collegiate Master Student Loan Trust a/k/a National Collegiate Master Student Loan Trust I"), National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3 and National Collegiate Student Loan Trust 2007-4 (collectively, the "Trust Defendants"). In the Amended Complaint, "NCT" or "NCSLT" refer to the Trust Defendants.  Am. Compl. ¶¶ 4, 72.

[2] In its Motion, Wilmington incorporates by reference the entirety of the Trust Defendants' Motion.  See Wilmington Br., ECF No. 45.1, at 1.

[3] The Amended Complaint contains misnumbered paragraphs. After ¶ 46, the paragraphs restart at ¶ 40.  The Court therefore refers to the first set of these paragraphs as 40.1–46.1 and the second set as 40.2–46.2.

alleges that in 2017, he asked AES to identify the current creditor of the loan, to which AES communicated that "NCT" owned the loan. Id. ¶ 2, 86–87. Between 2017 and 2020, Plaintiff made payments "pursuant to AES's communications that represented [the Trust Defendants] were entitled to collect . . . ." Id. ¶ 86. Apparently, Plaintiff paid his loans in full, and there is no allegation that the Trust Defendants failed to properly credit any payments made by Plaintiff. He now claims that the communications with AES were false—in other words, that there was no proof that the Trust Defendants owned the Loan—and that AES had no right to collect payment from him. Id. ¶¶ 2–3, 139. Plaintiff also alleges that, even if the Trust Defendants were the true owners of the Loan, they did not have proper licensure to collect from Plaintiff. Id. ¶¶ 88–92.

### i.    The Trust Defendants

The Trust Defendants allegedly purchase, take assignment of, and enforce student loan credit accounts originally extended by other creditors. Id. ¶¶ 74–76. Plaintiff claims that the Trust Defendants "cannot show that they are assignees of any particular loan and instead use false or misleading statements in the course of their collection efforts . . . ." Id. ¶ 79. Plaintiff also maintains that pursuant to the New Jersey Consumer Finance Licensing Act, N.J.S.A. 17:11C-1, et. seq. (the "CFLA"), the Trust Defendants were not properly licensed to collect on the Loan at issue. Id. ¶¶ 88–92.

### ii.    U.S. Bank

U.S. Bank serves as the Special Servicer of the Trust Defendants and is thus "responsible for the collection of the loans allegedly held by the [Trust Defendants.]" Id. ¶¶ 41.1–42.1. Plaintiff alleges that U.S. Bank, among other things, retains and audits debt collection agencies known as "subservicers" to "enforce and collect delinquent and defaulted student loans." Id. ¶ 46.1. Plaintiff claims that U.S. Bank "has allowed collection of loans in New Jersey when the actors are not properly licensed to engage in the lending business and servicing of student loans to be done without proper licensing of entities required to be licensed." Id. ¶ 40.2.

### iii.    TSI

TSI is a debt collection agency used by the Trust Defendants. Id. ¶ 7. As a "special subservicer," TSI allegedly oversees student loans that go into default. Id. ¶ 54. Plaintiff claims that TSI violated the CFLA and New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et. seq. (the "CFA"), because it "acted as a student loan servicer for the [Trust Defendants] without a license when a license was required." Id. ¶ 83; see also id. ¶¶ 78, 133, 139.

### iv.    Wilmington

Wilmington serves as Owner Trustee for the Trust Defendants. Id. ¶ 22. Plaintiff alleges that Wilmington acts on behalf of investors and "depends on collections being made of the student loans allegedly acquired by the [Trust Defendants]." Id. Plaintiff alleges that, along with the other defendants, Wilmington violated the CFLA "by making false or misleading communications that [the Trust Defendants] had acquired the loans of the Plaintiff" and permitting TSI to act as a student loan servicer without a license to do so. Id. ¶ 133.

2

Appx4

Plaintiff brings three causes of action against all Defendants: (1) a request for declaratory judgment and injunctive relief for violations of the CFLA (Count I); (2) violations of the CFA (Count II); and (3) unjust enrichment (Count III).  Id. ¶¶ 112–149.

### B.  Procedural History

On April 21, 2021, Plaintiff filed a putative class action complaint in New Jersey state court against unknown entity "National Collegiate Student Loan Trust."  See Browne v. Nat'l Collegiate Student Loan Tr., HUD-L-001598-21 (N.J. Super. Ct.).  The Trust Defendants removed the action to the New Jersey District Court under the Class Action Fairness Act ("CAFA") and moved to dismiss.  See Browne v. Nat'l Collegiate Student Loan Tr., No. 21-11871 (D.N.J.) ("Browne I"), ECF Nos. 1, 14.  On December 22, 2021, the District Court dismissed Plaintiff's complaint without prejudice, finding that Plaintiff failed to sufficiently allege concrete injury and that the CFLA does not confer a private right of action.  See Browne I, No. 21-11871, 2021 WL 6062306, *3–4 (D.N.J. Dec. 22, 2021).  The District Court then remanded the action to New Jersey state court.  Browne I, ECF No. 43.

On April 21, 2022, Plaintiff filed his Amended Complaint in state court against the Trust Defendants, U.S. Bank, TSI, and Wilmington.  See ECF No. 1.1.  On May 9, 2022, Defendants removed the action pursuant to CAFA, and on June 8, 2022, Plaintiff moved to remand.  ECF Nos. 1, 17.  On March 9, 2023, the District Court remanded the action due to lack of Article III standing. ECF Nos. 35–36.  On August 1, 2023, the Third Circuit vacated the District Court's remand order, finding that the Amended Complaint alleges a concrete injury in fact under Article III.  Browne v. Nat'l Collegiate Student Loan Tr., No. 23-2017 (3d Cir.), ECF No. 31.  Upon remand back to the District Court, the instant motions followed.

## II.   LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted).  To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III.   ANALYSIS[4]
### A.  Count I: CFLA Claim

Defendants argue that Count I should be dismissed because the CFLA does not confer a private right of action.  See Trust Defs. Br. at 12; U.S. Bank Br. at 14; TSI Br. at 16.  Alternatively, they argue that the CFLA is inapplicable here because the statute pertains only to consumer lenders

---

[4] Defendants argue that as an initial matter, they are improper parties in this action.  See Trust Defs. Br., 44.1, at 8–11; U.S. Bank Br., ECF No. 46.5, at 10–14; TSI Br., ECF No. 43.1, at 7, Wilmington Br. at 7–11.  The Court will consider those arguments—to the extent they are relevant to the causes of action— in Sections A, B, and C.

or sales finance companies.  Trust Defs. Br. at 14–18; U.S. Bank Br. at 14–15; TSI Br. at 18–19. The Court agrees.

The CFLA requires certain entities to obtain a license before conducting business.  See N.J.S.A. 17:11C-3.  As the District Court has previously held, the CFLA does not provide a private right of action, see Brown I, 2021 WL 6062306 at *3–4 (citing Veras v. LVNV Funding, LLC, No. 13-1745, 2014 WL 1050512, at *7–9 (D.N.J. Mar. 17, 2014)).  Nor does the CFLA imply a private right of action.  See Veras, 2014 WL 1050512, at *8–9 (assessing the legislative history).  Therefore, Plaintiff cannot bring a cause of action pursuant to the CFLA.

Plaintiff suggests that Defendants' alleged violation of the CFLA need not be a standalone claim, but rather can serve as the basis for his CFA claim.  Opp'n. at 29–31.  That theory also fails.  The CFLA states that "no person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."  N.J.S.A. 17:11C-3.  Defendants do not fall into the categories of a consumer lender or sales finance company as those terms are defined in the statute.[5]  See Trust Defs. Br. at 14–18 (explaining that the Loan at issue here does not constitute a "note," "retail charge account," or "retail installment contract" as defined under the statute); U.S. Bank Br. at 15–16 (explaining that U.S. Bank is a "depository institution" as defined by N.J.S.A. 17:11C-6, and thus exempt from CFLA requirements); TSI Br. at 18–19 (same as Trust Defendants).  Therefore, they cannot be subject to the licensure requirements set forth in the CFLA.  Accordingly, the Court dismisses Count I of the Amended Complaint with prejudice, as any further amendment would be futile.

## B.  Count II: CFA Claim

Defendants argue that Count II should be dismissed because (1) the CFA applies to the sale of merchandise, not debt collection efforts; and (2) Plaintiff has not adequately plead fraudulent misrepresentations or unconscionable business practices.  Trust Defs. Br. at 21; U.S. Bank Br. at 16; TSI Br. at 21.  The Court agrees.

The CFA concerns fraud in connection to the sale of merchandise or real estate.[6]  N.J.S.A. 56:8-2.  Debt collection on behalf of third parties, however, does not fall within the ambit of the

---

[5] The CFLA defines "consumer lender" as, among other things, (1) "[in] the business of making loans of money, credit, goods or things in action, which are to be used primarily for personal, family or household purposes" and be "charging, contracting for, or receiving a greater rate of interest, discount or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder," or (2) "in the business of buying, discounting or endorsing notes . . . in amounts of $50,000 or less."  N.J.S.A. § 17:11C-2.  Moreover, New Jersey courts have held that "notes" are distinct from "debts."  Woo-Padva v. Midland Funding LLC, No. BER-L-003625-17, 2022 WL 267938, at *2 (N.J. Law Div. Jan. 7, 2022).

The statute also defines "sales finance company" as, among other things, "in the business of acquiring or arranging for the acquisition of retail installment contracts or obligations incurred pursuant to retail charge accounts by purchase, discount, pledge or otherwise from a retail seller . . . and any person other than a retail seller who enters into a retail charge account with a retail buyer."  N.J. Stat. Ann. § 17:16C-1(f).

[6] The CFA applies to practices "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid."  N.J.S.A. 56:8-2.  The CFA defines "merchandise" as "any

4

CFA. See Ogbin v. GE Money Bank, No. 10-5651, 2011 WL 2436651, at *3 (D.N.J. June 13, 2011) (dismissing Plaintiff's CFA claim because "the Act does not apply to a debt collector's efforts to collect a debt"); see also Boyko v. American Intern. Group, Inc., No. 08-2214, 2009 WL 5194431, *4 (D.N.J. 2009) ("mere debt collection efforts on behalf of a third party . . . is not itself a sale of merchandise."); DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 64 A.3d 579, 588 (N.J. Sup. Ct. App. Div. 2013) ("Debt collection activities on behalf of a third party who may have sold merchandise are not unconscionable activities 'in connection with the sale' of merchandise.").    Because TSI and U.S. Bank are allegedly in the business of servicing or collecting debt on behalf of the Trust Defendants, see Am. Compl. ¶¶ 41.1–42.1, 54, their conduct does not fall within the purview of the CFA.[7]

Moreover, Plaintiff fails to plead that Defendants made a fraudulent representation or committed an unconscionable commercial practice in violation of the CFA.[8]  See N.J.S.A. 56:8-2. To the extent Plaintiff complains about the correspondence in 2017 in which he was told that "NCT" owned the loan, Am. Compl. ¶ 86, that representation was made by AES, not any of the named defendants.  Moreover, as discussed above, any theory that rests on Defendants' licensing and the CFLA necessarily fails.  Accordingly, the Court dismisses Count II of the Amended Complaint with prejudice, as any further amendment would be futile.

### C. Count III: Unjust Enrichment

Finally, Defendants argue that they did not receive an unjust benefit from Plaintiff that could allow his unjust enrichment claim to proceed.  The Court agrees.

A plaintiff alleging unjust enrichment must plead facts showing that "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it."  Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 505 (D.N.J. 2009).  Further, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or

---

objects, goods, commodities, services, or anything offered directly or indirectly to the public for sale." N.J.S.A. 56:8-2.15.

[7] Plaintiff argues that the Trust Defendants are liable under the "subsequent performance" provision of the CFA. Opp'n at 16.  As an initial matter, there is a distinction between a "debt buyer"—a purchaser or assignee of defaulted debt—and an assignee of non-defaulted debt.  Chulsky v. Hudson Law Offices, P.C., 777 F. Supp. 2d 823, 835–43 (D.N.J. 2011).  While the former is not subject to the CFA, see id., the latter may be subject to the CFA's "subsequent performance" provision.  See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 538 (App. Div. 2008) ("an assignee . . . may be liable under the CFA for its own unconscionable commercial practices and activities related to its repossession and collection practices in connection with the subsequent performance [of the assigned contract].).  But even if the CFA extends to the Trust Defendants'—assignees of Plaintiff's non-defaulted debt—Plaintiff fails to allege any fraudulent or unconscionable conduct in violation of the statute.

[8] A CFA claim based in fraud is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), but a CFA claim based on "unconscionable commercial practices" is subject only to the baseline requirements under Federal Rule of Civil Procedure 8.  See Katz v. Live Nation, Inc., No. 09-3740, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010); see also Ciser v. Nestle Waters North Am., Inc., 596 Fed. Appx. 157, 162 n.6 (3d Cir. 2015).

conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).

Plaintiff fails to allege that his payments to the Trust Defendants were unjust. Plaintiff's requested relief is based on the theory that the Trust Defendants collected loan payments from him without proof of ownership. Am. Compl. ¶¶ 48, 51. The Trust Defendants maintain that ownership of the Loan was properly transferred to the 2007-1 Trust and "there is nothing unjust alleged about the 2007-1 Trust having collected on Plaintiff's Loan." Trust Defs. Br. at 12; see also id. at 19 ("The 2007-1 Trust (a Delaware entity) purchased the pool of loans containing the Loan from The National Collegiate Funding, LLC (also a Delaware entity)."). Indeed, the Trust Defendants provide the Court with a copy of the Deposit and Sale Agreement, see ECF No. 44.2, which reflects that the Trust Defendants did obtain ownership of the Loan, see Trust Defs. Br. at 24 ("The 2007-1 Trust acquired Plaintiff's Loan in 2007 pursuant to a private contractual agreement (i.e., Deposit and Sale Agreement.").[9] Based on the foregoing, there is nothing unjust about the Trust Defendants receiving loan payments from Plaintiff.

Moreover, Plaintiff does not allege that U.S. Bank, TSI, or Wilmington received any benefit from Plaintiff's loan payments. The Amended Complaint contains no allegations that U.S. Bank collected any payments from Plaintiff or received an unjust benefit. See U.S. Bank Br. at 21. The same is true for TSI, an entity that services loans only if they are in default or become delinquent, see Am. Compl. ¶ 54, which is not the case here, see Browne I, 2022 WL 484954, at *1; Browne, No. 23-2017 (3d Cir.), ECF No. 31 at 3 (explaining that Plaintiff paid the Loan in full). Finally, there are no allegations that Wilmington collected from Plaintiff in any way—only the vague assertion that Wilmington's role as Owner Trustee "depends on" collections by the Trust Defendants. See Am. Compl. ¶ 22. Accordingly, the Court dismisses Count III of the Amended Complaint with prejudice, as any further amendment would be futile.

## IV.   CONCLUSION

For the reasons stated above, the Trust Defendants' Motion (ECF No. 44), U.S. Bank's Motion (ECF No. 46), TSI's Motion (ECF No. 43), and Wilmington's Motion (ECF No. 45) are **GRANTED**. Plaintiff's Amended Complaint is dismissed with prejudice, and this case is hereby **CLOSED**.

SO ORDERED.

_s/ Madeline Cox Arleo_
MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

---

[9] Generally, in ruling on a Rule 12 motion to dismiss, district courts "may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Courts may, however, consider documents that are "integral to or explicitly relied upon in the complaint." Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) (quoting Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020)). The Court finds that the Deposit and Sale Agreement is integral to the Amended Complaint and therefore may be considered at this stage.